Next case this morning, 17-3084, is Jerome McKinney v. University of Pittsburgh. Ms. Watterson. Good morning, and may it please the court, my name is Kim Watterson. I'm here for the appellant, the University of Pittsburgh. With the court's permission, I would like to reserve three minutes for rebuttal. Granted. Just a little bit of housekeeping, I have two issues here, and I noticed Judge Hardiman reminded someone earlier not to miss the second issue, and that's about the sufficiency of the process. But I'd like to start my argument today talking about the first and the foundational issue of whether the plaintiff, in this case a tenured professor, had a protected property interest in the full amount of his salary. Don't we have a problem with that issue right out of the gate? Because as I understand it, the argument below was that there was a property right in the tenure, but now the argument on appeal is the property right is founded in the policy. Exactly, Your Honor. And I was going to say I have two things that I need to take aim with. You're correct. The district court rooted it in tenure, and tenure alone, that just doesn't cut to the chase. Meet what Roth says is required. Federal courts don't create property rights. You need a legitimate claim of entitlement in an independent source, a state statute, a policy, much like exists in the four cases that this court drew to our attention and asked the court to discuss. Then the plaintiff pivoted. And on appeal, plaintiff disavows and doesn't try to embrace or justify or defend the district court's rationale that tenure alone provided a protected property interest in the full amount of the salary and instead pivoted to argue that the policy created that property right, perhaps recognizing the weight of our argument that an independent source was required. But we can affirm on any basis, right? So if that was explicitly stated in the handbook or policy, at that point you'd concede that there was a property interest, right? You can, Your Honor. Perhaps what Judge Harden was getting at, not to put words in his mouth, was do we have a waiver problem here? Is there an issue? Yes, this court, of course, well knows it can affirm on any ground. We did not press a waiver argument in our reply brief. Plaintiff did in the briefing below invoke the statute. The argument might have been, excuse me, the policy. The argument might have been slightly different. But nonetheless, the plaintiff did point to the policy. So let's assume we're talking about the policy here. JA 1153, this is Part 3. Each faculty or staff member performing satisfactorily will receive a percentage increase of the size determined that year for maintenance of real salary. Does that put the burden of proof on your client to show that he's performing unsatisfactorily? It does not, Your Honor. And I think the answer to that question is the distinction between eligibility and entitlement. And we discussed this at length in our reply brief, citing cases both from the United States Supreme Court and this court as well. A tenured professor, as a matter of fact, any professor or staff member pursuant to that policy is eligible for a salary or maintenance if they are performing satisfactorily. That is eligibility. That is not entitlement. As the Supreme Court in the 1999 case of American manufacturers, coincidentally dealing with a Pennsylvania workers' compensation statute, said that the property interest only ripens when there is an entitlement under state law. But he's not arguing about an entitlement to an increase and maintenance the way it's used in this policy in the handbook. Maintenance is increases that may go along with cost of living or annual adjustments. The argument seems to be that there is a property interest in the base salary, in maintaining it in the colloquial sense of the word. Well, Your Honor, that's where I was going to start and I'm going to return. I will. Judge Rubis, if you want me to say more about this policy, I will come back to that. But let me answer Judge Krause's question. And this is the problem with the district court's rationale, whether it's policy or tenure. It couldn't be more clear in the U.S. Supreme Court's precedents, Roth and otherwise, that, again, the federal courts do not create property interests. Instead, you must find something that's explicit, mutually agreeable, and entitlement. And that needs to come from an independent source. But that takes us right back to Judge Rubis's question, which is the text of the policy. Because the policy says in unqualified terms that a faculty or staff member performing satisfactorily will receive an increase, which suggests by negative implication that the default in the absence of satisfactory performance is that you do not receive an increase. And then on the next page, it actually addresses what happens where there's unsatisfactory performance. And there, again, it does not indicate that there is going to be any reduction. It says that persons whose performance has been judged unsatisfactory must be informed of the specific reasons for that judgment. But it doesn't – while the prior sentence talks about receiving a salary increase, it does not go on to say they may receive a salary decrease. It's nothing in the text of the policy suggests that there is anything but an entitlement to continue at least the base salary. Isn't that a problem? No. And I really need to make three points, if the Court will be patient with me, because I will answer Judge Krause's question, Judge Bevis's question, and then also return to the issue of whether or not it needs to be explicit. And I think perhaps the best way to illustrate what is required in order for a public employee to have a property interest that's attached under state law, a word used when we're talking about eligibility versus entitlement, is you need to have a source, an external source, and Roth uses the words explicit. The four cases that this Court asked counsel to be prepared to address perfectly illustrate what those sources, explicit sources, look like, not by negative implication. In each of those four cases, there is a state law, or in one of them, a policy, that expressly said, in one way or another, there shall be no salary reduction without just cause. So there was the protected interest not just in whether you're demoted or not demoted. There was something express. The property right was created by the state, and due process was required. I'll answer your second question about negative implication. First of all, that's not what the precedents require by negative implication. One way to put it is this. Again, you have to have a state law, an independent source. It may be a policy conferring a property interest. You can't, the question, it's phrased as, again, whether there's an external source. To do it by negative implication would mean the law says, and it would increase exponentially the amount of property rights that are out there, and also it would turn the test on its head. The law doesn't say that a property right must be affirmatively conferred. The law does not say that unless a law or policy or contract affirmatively authorizes the government to take something away, then that thing cannot be taken away without process. What is missing in this case is what exists in the four cases in this court's letter, as well as plaintiff's cases, Dee and Smith, where there was a suspension without pay, and there was a property interest in that because a collective bargaining agreement and a state law, specifically a borough code. So what you're saying, as I understand it, Ms. Watterson, is this policy could have created a property interest, but it's just not specific enough. Your Honor, that was – More is needed than sort of greed implications. Exactly. More is needed, and that's what Roth demands. That's not what I think the law ought to be. Right, but what about the notion of tenure? I mean, it can't be the law, can it, that you give a professor a right to tenure with no salary protection, right? Because if you could give somebody tenure and then send them a letter that says, next year you're going to be paid a dollar, that's not tenure, right? Your Honor, and the law accounts for that. And how do we deal with that? Is it a constructive discharge situation? Exactly, Your Honor. It's a Goldilocks test. We're not sure exactly where to draw the line except we draw it at constructive discharge. And there's no constructive discharge contentions. I mean, two things, by the way, that we don't argue about. A tenured faculty member could, and I think if you look at the statement of our question presented, whether tenure alone confers this property right, we agree that if there's an agreement, a contract, a state statute, and there are some states that actually confer this salary protection. In addition, we say that tenure is a property right in continuous employment, certainly termination. And that's obvious. But there could be circumstances where a salary reduction meted out to a faculty member amounts to a constructive discharge. And that indeed would be, and we don't disagree with this, and we even cite case law that says as much, that that would amount to a deprivation of the property right in continuous employment. May I go back and answer Judge Bevis' question just to bring this full circle? And I think it builds upon the basic foundational notion in Roth that you must have a property interest independent source created by law, et cetera, et cetera. The Supreme Court has dealt with a case like the condition versus entitlement case. Plaintiff is eligible. He's eligible. There's a condition to being eligible for maintenance. That's satisfactory performance. Until the performance is deemed satisfactory, the right to the increase doesn't ripen. Again, American Manufacturers says it better than I could ever say it in the few minutes that I have. And they don't, the court does not hold in American Manufacturers that you have a right to a hearing as to whether the condition precedent to the attachment of the property right ripens. And that's just, you know, the law. So, again, we start with Roth. I agree that this is a statute, or excuse me, policy that says there's eligibility. But, again, the condition precedent wasn't met. But Goldberg v. Kelly does. And we talked about that in Roth in the context of welfare benefits where there are conditions preceding their eligibility conditions. If they're satisfied, then an entitlement follows. And we said that constitutes a property interest regardless of there being eligibility criteria and the plaintiff's entitled to a hearing on that issue. How do you get around that? Your Honor, I don't disagree in one sense, but I do disagree in another sense. In the Goldberg case, the plaintiffs already were receiving welfare benefits, and then they were going to be terminated. American Manufacturers, again, distinguishes between those circumstances. Where there's conditions precedent, the conditions precedents have been met. Someone wants to terminate benefits after they have. And the word I keep emphasizing, because it's in the case law, it really helped it stick in my brain, attached. There were attached rights in Goldberg in the sense that there were not attached property rights here. But that seems to beg the question. That is the plaintiff's theory. McKinney says it did attach, and you can't now reduce it without the process. If I may have one minute about American Manufacturers, and I'll let the Court decide whether I address the second issue. This really helped me think about it. At issue in that case were medical benefits associated with workers' compensation. And there were two criteria for eligibility to have medical payments paid under the workers' compensation law. One was it a work-related injury, and two were the medical expenses, I believe the words were reasonable and necessary. And in this case, the plaintiff had not cleared the hurdle yet of demonstrating that they were reasonable and necessary. The Court said because this Pennsylvania workers' compensation law said you don't have a right to these benefits until you clear those two hurdles. Those were the Court's words. You do not have a protected property interest that entitles you to due process. The Court didn't say, for instance, we need to have a hearing to determine whether the medical costs are reasonable and necessary. Unless and until that criteria is met, there's no property right. This might be a good segue if I may have one minute to talk about whether the process was sufficient. I think that may take a while, so let's hear that on rebuttal. Okay, Your Honor. Thank you. You've preserved it for rebuttal. Let's hear from Mr. Rupert. Thank you, Your Honor. Sean Rupert here for Appellee Jerome, Professor Jerome McKinney. We're here today to ask this Court to affirm the District Court's decision summary judgment in favor of Dr. McKinney and find that, one, that he had a protected property interest in the entirety of the salary, and two, that he was not afforded proper due process for that salary. Briefly on the second before we get to the first, why isn't the hearing on September 6th enough given that he doesn't collect his paycheck until September 30th? Our opinion on that is severalfold. One, the letter that was given to Dr. McKinney on that date explaining the reasons as to why his salary was going to be reduced was dated a month before that meeting even happened. That's irrelevant. Meaning a decision was made ahead of time. The question I want to focus on is pre- versus post-deprivation. Why should we treat this as post-deprivation when there's 24 days in which if he prevailed, his paycheck could have been just paid as usual? Well, I would say that the – basically what I would say is that the pre-deprivation, even if we do consider it to be a pre-deprivation hearing, was not sufficient given the gravity of the deprivation that Dr. McKinney endured by having his salary reduced by 20 percent basically in purpose. I want to hear whether you have an argument as to whether it, in fact, is post-deprivation. Are you contesting that? Do you have a basis for contesting that? We cannot find any case law that basically says when the date of the deprivation is. There is some Fifth Circuit case law that was quoted certainly by the appellants in this case that would state that the 30th when he received the paycheck was the date of deprivation as opposed to beforehand. My argument, while there is – does not appear to be controlling precedent within the Third Circuit, is that while he may have received his paycheck on the 30th, he essentially started working for less money on the 6th – or on the 1st, excuse me, six days before this hearing even started. The decision was made at this hearing, but it was essentially retrograded back to the 1st, so he ended up working a full week time period at a lower rate without even knowing about it until the 6th. It just sounds circular. Is there any persuasive authority from anywhere else that you would like us to look at? No, Your Honor. Okay. Why don't you go back to the first issue. Okay. So on the first issue, our position has been described as a pivot. I would disagree with that characterization. We have maintained this as our basis throughout the entire of our summary judgment briefing. In fact, our SOAR reply was even – the first heading was the property interest comes from policy 0709-11. So it's not the common law of tenure, then? It's the policy? That's not what we've been arguing, I guess. We would believe that it would be the policy. I do think – All right, and the policy tells you what you get if you perform satisfactorily, but we have a record here that indicates your client was viewed as performing unsatisfactorily. I would say that the case law would indicate that he has an interest in being judged, given that he is guaranteed by this policy – this policy does state very clearly that he will receive his salary plus a maintenance of it for the consumer price index as long as he is performing satisfactorily. He has due process rights in determining whether or not this – whether or not his performance was satisfactory. That does boil down to an argument of a property interest by negative implication. And what do you do with the – we asked you to be prepared to address four cases that, as your colleague on the other side of the aisle has pointed out, seem to describe the true mutually explicit agreements, where there's provision against reduction absent just cause or particular process. Well, I would – We don't have that here. Yeah, I would say that we do have that here, especially when we go and look at the second page of the policy at number – at Roman numeral five, reconsideration of salary decisions. We're saying that procedures should be developed among each school so that these salary – possibly overturned. I think that that shows that there's a clear expectation among the university that there is a property interest here and that they have an interest in due process and that there are specific areas like that. But wait a minute. I think it's more like the Fifth Circuit case, Williams, where there – where it provided a basis to – for an understanding that salary could go up or down and that there's a process for addressing that. Well, I wouldn't say that there is a basis for understanding that a salary could go down here, as you were saying. There's no policy in here about it going up and down, and Williams was very, very explicit in understanding that a salary could be added or could be detracted. And in that case, his salary was reduced, not from his tenured position, but his salary was reduced because he was let go as chair of a department, which was a separate at-will position. But the other cases – look, there are state statutes, there are collective bargaining agreements that tend to use language like salary should not be reduced, you should not be demoted or transferred to a lower-paying position absent just cause. Bargainers know how to bargain for these. And there's no just cause here. There's nothing – you are asking us to infer that there's a right here, and I don't see procedures should be developed as no salary cuts absent just cause. It's not mutually explicit as Kerr v. Sindeman requires. So is there anything else that's more explicit here? Well, I mean, I certainly think the idea that you 100% will get a – your salary maintained if you are performing satisfactorily creates that right in the interest of determining whether or not you are satisfactory. Take me to the phrase on JA 1153, 1154 that you think is what you're hanging your hat on. Certainly. I mean, I think the specific phrase that I would say would be in Section 201, each faculty or staff member who performs satisfactorily will receive a percentage increase determined for the maintenance of real salary. I don't think that that could be more straightforward. You absolutely will receive this as long as your performance is satisfactory. I think that creates a right to make sure that your performance is judged accurately. All right. So I'll ask you the same question as your adversary. How do we read the burden of proof on the satisfactorily element? I asked her. I'll ask you. What tells us that the burden of proof that there's a presumption or a right to have it and that it's the university that then has to disprove it through procedures that comport with due process? I think given the way that the university operates, the tenure statutes as they are, and the fact that, you know, we've been told and fully briefed on this, that this salary reduction has only happened three or four times in the course of the last, I believe, 30 or 40 years at the university, that this is a very uncommon, unusual event that is not within the scope of the general understanding of what's happened between the professors and the university that they work for. Even the figure, the 20% figure as to where that come from, you know, the provost of the university testified at deposition that she had no idea where that came from, that it was not written down, that it was handed down to her from her predecessors. She had no idea how that figure was reached. And I think that just the basis and how unusual the situation that this is within the university puts this ability outside of normal understanding, especially given the policies and the lack of any reference to a policy reduction or a salary reduction, and a very, very explicit reference to a right to certain maintenance, and then also eligibility for merit increases would create that property right. Have they fired people even less frequently than they've reduced salaries? Tenured, as far as I know, there hasn't been a tenured professor fired from the University of Pittsburgh within the memory of any of the administrators that I've talked to or have testified at this deposition, at deposition in this case. If I might interrupt, I will say that while this is not necessarily a firing, you know, it's stated in the letter that Higa's salary could be reduced by another 20% next year, by another 20% next year. At some point it might be a constructive discharge. At some point it might be a constructive discharge, but we're still talking about a permanence level here that rises above almost any other case that we've looked at. Or due process rights have been triggered by five-day suspensions, four-day suspensions, two-week suspensions without pay. This is essentially the equivalent of losing by 20%, losing I believe it was something like 20 weeks every year. But are those suspensions, due process hearings triggered by virtue of the explicit policy, which says if you're suspended, et cetera, then these procedural rights flow there from? There was collective bargaining agreements in those cases that said that you had a right. In the D case, the quote given to the court was also by negative implication. It basically stated that if he had a right in only being suspended for a cause, then he would certainly have a due process right in being sure that the for cause was actually correct. In this situation where he has a right to maintain a salary, unless I see his performance satisfactorily, I think the implication would flow from there. Can we take a – Perry v. Sinderman, the Supreme Court case, seems to indicate that we can supplement what there is of the express understanding in a statute or rule or policy with a course of conduct, with evidence of words or actions, interactions between the parties. Here we have a letter that was sent by the dean a year earlier that advised your client that he might have a salary reduction if his performance continued to be unsatisfactory. Your client didn't object to that or take issue with that, the ability of the university to do that under the terms of the policy. Doesn't that inform whether there was in fact an understanding between the parties as to their ability, even without process, the kind of process you're requesting, to reduce salary? Well, there's a couple issues that I would like to address with that letter the year prior. I think the most significant of it is that it describes or it speculates about conduct that is going to happen in the future. So it has warned him, based on what's happened prior, that he may face a salary decrease in the future. But it doesn't – one, it didn't take into account what happened in that intermediate year, obviously, because he was working at the beginning of the year. So I don't know that that can necessarily be considered notice, because it's just stating that that's a possibility. 30 years, his teaching evaluations are bad. Students are not taking his classes. So he can try to change things in the intervening year, but he's been warned about the kinds of things that need to change. And there's no allegation, I believe, that he suddenly started publishing up a storm. His teaching evaluations have gone up. So you're right that things could have changed in the intervening year, but I don't see allegations that suggest that suddenly it would come out of the blue that he got a salary cut after this last year. I don't think that we can put it out into the blue that it would have been cut based on that letter. What I will say is that the severity of what that is, the 20 percent figure was certainly not contained within that, given that only, I believe, as I testified, three or four professors have had this done over the course of the last 30, 40 years. He certainly did not know that this severe of a deprivation was at stake. And speaking to my client, his thought was that they might give him a zero increase or a small decrease. But the idea that one fifth of the value of his employment with the university would be suddenly taken away, I don't think is expressed in that letter, nor has it been communicated to my client before that. Amicus here has raised the concern that if we were to recognize your claim, that it would create a property interest in all benefits of tenured status and wouldn't be cabin even to base salary. What would the limiting principle be if there were recognition of salary as a property interest attendant to tenured status? Well, I don't think that we need to get to tenure as the basis for it. Our argument throughout this has been that this one specific policy, this one specific university grants the professors at this specific university the right to the maintenance of their salary. Absent this policy, we could make a broader argument about tenure itself, which would obviously federalize and affect salary negotiations for a lot of people, depending on how broad reaching of a decision you came to. But what we're simply asking the court to do is say that in this situation, the professors at this university under this policy have a right to their salary maintenance. Aren't other benefits also provided? Vacation days, for example, amounts of sick leave. Wouldn't this elevate what are traditionally employment terms that are negotiated between the parties, like salary traditionally is, and bring the federal courts into the business of supervising that as constitutional property? I don't believe so. If there was, again, an outside policy that we could point to in this situation, which I don't believe that we do that guaranteed that those benefits would stay in place absent due process or guaranteed those benefits would stay in place if they achieved a certain level of performance, then we might be talking about that. But in a situation where we have a policy that basically guarantees one thing, which is the maintenance of your salary, I think we can make a decision here, that your honors can make a decision here that's more narrow and doesn't spread the courts into every little employment dispute. Thank you, Mr. Rupert. Thank you. We'll hear Ms. Waterson on rebuttal. Ms. Waterson. I didn't even get to the podium, Your Honor. I'm ready. I'm ready. J1153, right up for room number three. The salary increase received by each individual will become part of his or her base contract salary in subsequent years. We haven't discussed that. It's not precatory. It's not indefinite. It's not conditional. There's a base salary. It's a defined thing that someone's supposed to get. The satisfactory issue is about the increase. We didn't get to the salary increase because here the complaint is that he got a salary cut, not that he was denied an increase. Why isn't that an explicit right to a base contract salary that's not going to be touched absent due process? What's missing there, Your Honor, is the language that we see in other cases and other policies where there's the independent source, the affixing and attachment of the right, by saying without due cause, without just cause. And I think that's important. That's the language that's used. You know, when I went back after this Court pointed out the four cases, I went back and not only read those cases, but reread all of our cases. And it was remarkable. I was circling with a pen as I went through every case where a property right was found, you know, using the Roth and Perry and other tests, and you're always able to point to something with a public employee that said may not do X, be it demote, suspend, reduce salary without cause. Is it enough for one state university to say it, or does the state legislature have to say it? Oh, Your Honor, a state university could say it, for instance, as best I know. Otherwise, I think the other side could have pointed it out. Pennsylvania doesn't have the type of statute that some states do that protect the salary of tenured employees. And so Pennsylvania public institutions, you know, there could be a collective bargaining agreement. And there are. Well, but then it's a contractual right. I'm focused for a minute on property rights. As you pointed out, property rights that trigger procedural due process are creatures of state law. Or a contract, Your Honor. The contract is enough. Yes. As long as it's a contract with a state employer. Exactly, Your Honor. Exactly. And that's why I wanted to cut you off, and I didn't mean to do that. I apologize. I've used the word state law. State law in the Roth sense embraces those rights you get by virtue of state law, which can include state contract law. Okay. Can I just say a few words about the process? And I will go fast. By the way, this policy does not guarantee maintenance. But anyway, let me just start with a place I don't want to start because I don't think that there was a right to notice an opportunity to be heard here because there isn't a property interest. But let's just assume for a moment that there is. Plaintiff has said, I think it's an eligibility, not an entitlement. I'm entitled to a hearing to determine whether the dean was correct that my performance was unsatisfactory or whether I am correct that it is satisfactory. My goodness, he got that hearing. I don't mean to be so colloquial and informal about that. If you look at the Supreme Court and this circuit's case law, you know, it doesn't need to be a full evidentiary hearing. The two-hour meeting where reasons were outlined, chance to respond. As a matter of fact, the district court judge here found that the content of the notice was sufficient in terms of the explanation given to Dr. McKinney with respect to why he was deemed to be unsatisfactory, his performance was unsatisfactory. And also the court said, I will find the page in the brief, 28 and 29, excuse me, of the JA. They said, and he had an opportunity to respond at that meeting to explain in his view to the dean why he wasn't wrong. So he got the hearing used in the colloquial sense that he wanted on the issue of whether his performance was satisfactory. If there was a property interest in the unhurried setting of a university's decision to reduce salary, why wouldn't due process require something that more cleanly constituted pre-deprivation process, not a meeting where someone is told, that I'll complete, this took effect five days ago? Well, Your Honor, I disagree with when it took place because it's deprivation, not the decision on deprivation. And I'm going to answer this quickly and refer the court to my brief. But we look at Loudermill, McDaniels, Copeland, Edmondson, talking about what suffices for pre-deprivation process. It can happen at a meeting. The decision can already be made in advance of the meeting just so it's prior to the deprivation. You don't need to even tell somebody what the meeting is going to be about. You can tell them at the meeting. So in terms of what happened there, it under any, even in circumstances where people have been terminated or suspended, and again, the cases are all over the brief. This surely sufficed. And again, I think the district court didn't disagree. I know it's for this court to decide that it sufficed. The district court's view was it just came too late. And that is wrong for all of the reasons stated in our brief. And finally, I just want to make the last point, which is very important and arguably dispositive. Under this court's precedence, the Alvin case is the leading case on this. And that is when a plaintiff is complaining that he or she has not received sufficient process, and there is additional process provided and available, and the plaintiff does not avail him or herself of that process, they cannot complain about the failure to receive constitutionally adequate process. Here, the record is clear. Dr. McKinney did not avail himself of the appeal through the Merit Review Committee. I'd ask this court to reverse on either of the two grounds. Thank you, Ms. Watterson. Thank you, Mr. Rupert, for the excellent argument. The court will take the matter under advisement.